IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARLOS A. MONTANEZ, ) | |
| B46636, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-cv-01147-NJR |
| vs. ) | |
| ) | |
| SEAN M. WOLTERS, ) | |
| SERGEANT ANTHONY, and ) | |
| KIMBERLY BUTLER, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Carlos A. Montanez, an inmate currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 pertaining to events at Menard Correctional Center ("Menard"). Plaintiff contends Defendants failed to protect him from an assault by another inmate and/or instigated the assault, in violation of the Eighth Amendment. In connection with these claims, Plaintiff sues Sean M. Wolters (Correctional Officer, Intelligence Office, Menard), Sergeant Anthony (Internal Affairs, Menard), and Kimberly Butler (Former Warden, Menard) in their individual capacities. Plaintiff seeks declaratory judgment and monetary damages.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

1

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

In August 2010, a Menard corrections officer was assaulted by an inmate named Jose Garcia. (Doc. 1, p. 2). The intelligence unit identified Garcia as being a member of the Insane Unknowns, a Security Threat Group ("STG") affiliated with the Latin Kings, a larger STG. *Id.* In connection with the investigation into Garcia, another inmate, Rene Amigon, was identified as a known leader of the Latin Kings. (Doc. 1, p. 3). At the close of the investigation, Amigon was the subject of a disciplinary report authored by Wolters. *Id.* That report identified Plaintiff (and several other inmates) as having been participants in the STG renunciation program at Tamms Correctional Center ("Tamms"). *Id.* The STG renunciation program is a confidential program which allows gang members to officially renounce their gang membership. *Id.* Participation in

the program involved answering questions about the inner workings of the subject STG during a recorded interview. *Id.* Wolters's report indicated that Plaintiff participated in the STG renunciation program while incarcerated at Tamms and successfully renounced his affiliation with the Latin Kings. *Id.*

Illinois Department of Corrections officials, particularly officials such as Wolters who work in the intelligence unit, know the Latin Kings are a violent STG with their own code of conduct. *Id.* This code of conduct includes a strict prohibition on cooperating with law enforcement. *Id.* Additionally, it is well known that anyone who renounces his membership with the Latin Kings is considered a "snitch." Despite having this knowledge, Wolters's report was provided to Amigon, a known member of the Latin Kings, without protecting Plaintiff's identity. (Doc. 1, pp. 3-4). Amigon shared the report with other inmates. (Doc. 1, p. 4). Accordingly, Amigon and other inmates knew that Plaintiff had cooperated with law enforcement and renounced his membership in the Latin Kings. *Id.*

Plaintiff spoke with Anthony on several occasions regarding his safety in relation to Wolters's report. (Doc. 1, pp. 4-5). Plaintiff indicated he was particularly concerned because Menard had recently seen a large influx of Latin King members previously incarcerated at Tamms. (Doc. 1, p. 5). Anthony ignored Plaintiff's concerns and told Plaintiff that no one was going to do anything to him. *Id.* Plaintiff also conveyed his concerns, in person, to Butler. *Id.* Plaintiff indicated he was concerned one of the inmates recently transferred from Tamms would find out about his participation in the STG renunciation program and assault him. *Id.* Butler indicated she would look into the matter but did not follow through on her promise. *Id.*

On October 7, 2015, while walking down a flight of stairs, Plaintiff was assaulted by a member of the Latin Kings. *Id.* Plaintiff was kicked in the back of the head and called a "stool

pigeon." (Doc. 1, p. 6). Plaintiff fell down the stairs and hit his head on the floor. He was then repeatedly punched in the face until he lost consciousness. *Id.* Plaintiff suffered a broken skull and multiple lacerations on the face, requiring stitches. *Id.* The assault also resulted in permanent injuries, including balance issues, severe headaches, and recurrent nightmares and anxiety. *Id.* Plaintiff continues to fear another assault and will have to undergo several additional surgeries to repair damage from the assault. (Doc. 1, pp. 6-7).

## Discussion

With regard to the substantive allegations in Plaintiff's Complaint, the Court finds it convenient to divide the *pro se* action into two counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

> **Count 1 –** Eighth Amendment claim against Wolters for distributing an unredacted disciplinary report that identified Plaintiff as a participant in the STG renunciation program, thereby placing Plaintiff at risk for assault.
>
> **Count 2 –** Eighth Amendment Claim against Anthony and Butler for failure to protect Plaintiff from assault**.**

As discussed in more detail below, both counts survive preliminary review.

*Count 1*

Due to the "obvious danger associated with a reputation as a snitch," jail officials may violate an inmate's constitutional rights by "label[ing] him a snitch" to other inmates, *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001), at least when the inmate suffers physical harm at the hands of other inmates as a result. *Saunders v. Tourville*, 97 F. App'x. 648, 649 (7th

4

Cir. 2004); *see also Merritte v. Kessel,* 561 F. App'x. 546, 548 (7th Cir. 2014) (labeling an inmate a "snitch" may expose that inmate to serious harm and could violate the Eighth Amendment); *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) (noting that "it's common knowledge that snitches face unique risks in prison").

According to the Complaint, the disciplinary report authored by Wolters indicated that Plaintiff participated in the STG renunciation program while housed at Tamms and renounced his membership in the Latin Kings. As detailed in the Complaint, this is the equivalent of identifying Plaintiff as a snitch, and it placed Plaintiff in danger. Despite knowing the risks associated with this type of information, Wolters distributed an unredacted copy of the report to another inmate—a known member of the Latin Kings. Subsequently, Plaintiff was attacked and seriously injured. During the attack, the perpetrator called Plaintiff a stool pigeon, suggesting the attack was motivated by a belief that Plaintiff was a snitch (calling Plaintiff a "stool pigeon" is akin to calling him a "snitch"). *See Merritte v. Kessel,* 561 F. App'x. 546, 548 (7th Cir. 2014).

Considering the legal authority discussed above, these allegations are sufficient to state an Eighth Amendment claim as to Wolters. Accordingly, Count 1 survives preliminary review.

*Count 2*

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). Of course, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with

"deliberate indifference" to that danger. *Id*.; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a specific threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Anthony and Butler had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). Conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

In this case, Plaintiff alleges that he informed Anthony and Butler about a specific threat to his safety—the threat of an attack by inmates affiliated with the Latin Kings who believed Plaintiff was a snitch because of his participation in the STG renunciation program. Defendants failed to act, and Plaintiff was subsequently attacked by a member of the Latin Kings for being a "stool pigeon."

Considering the relevant legal authority, at this stage of the litigation, these allegations are sufficient to state an Eighth Amendment claim as to Anthony and Butler. Accordingly, Count 2 survives preliminary review.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is subject to further review as to **WOLTERS** in his individual capacity. Further, **COUNT 2** is subject to further review as to **ANTHONY** and **BUTLER** in their individual capacities.

**IT IS FURTHER ORDERED** that as to **COUNT 1** the Clerk of the Court shall prepare for **WOLTERS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). As to **COUNT 2**, the Clerk of the Court shall

prepare the same for **ANTHONY** and **BUTLER**. The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be

**REFERRED** to Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  February 15, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**