IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CARLOS MONTANEZ,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:16-cv-1147-NJR-DGW |
| **SEAN WOLTERS, BRANDON ANTHONY, KIMBERLY BUTLER, CHAD HASEMEYER,** | ) |
| Defendants. | ) |

## ORDER

**WILKERSON, Magistrate Judge**

Pending before the Court is a Motion to Quash filed by the Illinois Department of Corrections, a non-party movant (Doc. 78). For the reasons set forth below, the Motion to Quash is **DENIED.**

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Carlos Montanez is an inmate currently incarcerated at Pontiac Correctional Center. Montanez filed his original complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 alleging Defendants Sean Wolters, Sargent Anthony and Kimberly Butler failed to protect him from assault by another inmate and/or instigated the assault, in violation of the Eighth Amendment (Doc. 7, p. 1). On December 18, 2017, Montanez was granted leave to file his First Amended Complaint adding Chad Hassamyer and Mike Atkinson as defendants (Doc. 33).

The pending action relates to an August 2010 incident at Menard Correctional Center, in which a corrections officer was assaulted by an inmate named Jose Garcia. (Doc. 1, p. 2). The intelligence unit identified Garcia as being a member of the Insane Unknowns, a Security Threat

Group ("STG") affiliated with the Latin Kings, a larger STG. *Id.* In connection with the investigation into Garcia, another inmate, Rene Amigon, was identified as a known leader of the Latin Kings. (Doc. 1, p. 3). At the close of the investigation, Amigon was the subject of a disciplinary report authored by Wolters. *Id.* That report identified Montanez (and several other inmates) as having been participants in the STG renunciation program at Tamms Correctional Center ("Tamms"). *Id.* The STG renunciation program is a confidential program that allows gang members to renounce their gang membership. *Id.* Participation in the program involves answering questions about the inner workings of the subject STG during a recorded interview. *Id.* Wolters's report indicated that Montanez participated in the STG renunciation program while incarcerated at Tamms and successfully renounced his affiliation with the Latin Kings. *Id.*

Illinois Department of Corrections officials, particularly officials such as Wolters who work in the intelligence unit, know the Latin Kings are a violent STG with their own code of conduct. *Id.* This code of conduct includes a strict prohibition on cooperating with law enforcement. *Id.* Additionally, it is well known that anyone who renounces his membership with the Latin Kings is considered a "snitch." Despite having this knowledge, Wolters's report was provided to Amigon, a known member of the Latin Kings, without protecting Montanez's identity. (Doc. 1, pp. 3-4). Amigon shared the report with other inmates. (Doc. 1, p. 4). Accordingly, Amigon and other inmates knew that Montanez had cooperated with law enforcement and renounced his membership in the Latin Kings. *Id.*

Montanez told Defendants he was concerned for his safety because Menard had recently seen a large influx of Latin King members previously incarcerated at Tamms, many of whom believed him to be a snitch. (Doc. 1, p. 5). Montanez states Defendants ignored his concerns (Amm. Compl., p. 15).

On October 7, 2015, while walking down a flight of stairs, a member of the Latin Kings assaulted Montanez. (Doc. 1, p. 5). He kicked Montanez in the back of the head and called him a "stool pigeon." Montanez fell down the stairs, hit his head, and was then repeatedly punched in the face until he lost consciousness (Doc. 1, p. 6). Montanez suffered a broken skull and multiple lacerations to his face, requiring stitches (Doc. 1, p. 6). The assault also resulted in permanent injuries, including balance issues, severe headaches, recurrent nightmares, and anxiety (Doc. 1, pp. 6-7).

On July 13, 2018, counsel for Plaintiff issued two subpoenas to the Illinois Department of Correction (Docs. 78-1, 78-2). The IDOC file the pending motion to quash as a non-party movant on August 13, 2018. The Court held a Discovery Dispute Conference on October 17, 2018, at which time the parties indicated the only remaining discovery issues were the following:

> **Request No. 1**: All documents relating to the Renunciation Program policies, guidelines, methods, procedures, rules, handbooks, or any other documents of general applicability. This Request includes, but is not limited to, documents relating to the Renunciation Program's confidentiality, application and acceptance into the Renunciation Program, protection of participants in the Renunciation Program, removal from the Renunciation Program, and how officers should communicate with or about participants in the Renunciation Program. The relevant time periods for this request of [sic] January 1, 1999 to present.
>
> **Request No. 2**: All documents relating to Mr. Montanez's involvement with the Renunciation Program. Such documents include but are not limited to, documents created for or relating to his application to, acceptance into, participation in, and actual, potential, or threatened expulsion from the Renunciation Program.

The IDOC argued the documents relating to the above requests were protected by the law enforcement investigatory privileged (Doc. 78, p. 5). However, because IDOC refused to allow counsel for Defendants access to the documents, counsel for Defendants could not speak to their contents. The Court Ordered IDOC to produce all documents contained in the privilege log for *in camera* review (Doc. 89). The Court reviewed the on October 22, 2018.

## ANALYSIS

Rule 45(d)(3)(A)(iii) requires the Court to quash or modify a that requires disclosure of privileged or other protected matter; if no exception or waiver applies. FED. R. CIV. P. 45(d)(3)(A). The burden of establishing the existence of a privilege rests on the party asserting it. *Matter of Walsh*, 623 F.2d 489, 493 (7th Cir. 1980).

IDOC argues it should not have to disclose the documents requested by the subpoena pursuant to 730 ILCS 5/3-2-5 and the common law investigatory privilege (Doc. 78, p. 5-7. The Illinois statute relied on by IDOC, however, exempts a department from disclosing information under the Freedom of Information Act, not pursuant to discovery. 730 ILCS 5/3-2-5(c). Further, the Court has reviewed the documents and finds, contrary to IDOC claims, that releasing the documents is unlikely to compromise its ability to investigate and deter criminal activity (Doc. 78, p. 7). Nothing in the documents would identify or relay any information specific to either Mr. Montanez or other inmates. The majority of the documents describe only general policy information that is neither unique nor unexpected in a renunciation program. Further, the few documents that arguably contain information specific to the renunciation program — Administrative Directive 05.08.105 Attachments A & B — are actually read verbatim to inmates before they participate in the process. Thus, IDOC has already provided the information in those documents to both Mr. Montanez and every other inmate who requested participation in the renunciation process.

Because the Court finds that none of the information in the documents is likely to compromise IDOC's ability to investigate and deter criminal activity in the prisons, it does not qualify as privileged material.

## CONCLUSION

For the foregoing reasons, the Motion to Quash (Doc. 78) is **DENIED.** IDOC is **ORDERED** to produce the documents to Defendants' attorney on or before **November 5, 2018**. Defendants shall produce the documents to Plaintiff's counsel on or before **November 19, 2018,** subject to the following conditions**:**

1. All documents shall be marked "Confidential – Attorneys' Eyes Only."
2. Neither Plaintiff's counsel nor those authorized individuals listed in paragraph 3 may show or otherwise disclose the confidential material, or information within the documents, to the Plaintiff, Carlos Montanez, for any reason without prior written permission from Defendants' counsel or an Order of the Court.
3. Such confidential material shall be disclosed or made available only to the following persons: (a) counsel of record or other licensed attorneys participating in the litigation; and (b) personnel who are specifically assisting in this litigation, provided that such individuals are not current or former inmates in the Department of Corrections.
4. Persons designated in paragraph 3 shall not use, disclose or disseminate any of the above confidential material other than for purposes directly related to this litigation and shall not disclose or disseminate such confidential material to any others, without prior written permission of the Department of Corrections or by order of the court.
5. A person designated in 3(b) shall not have access to any above identified confidential material until he or she has indicated in writing they have read a copy of this Order and understand they may not disclose or disseminate any of the contained information.
6. Plaintiff may not review Confidential Materials and may not have, possess, or keep a copy of the protected documents. Plaintiff will not be allowed to learn of the contents of any such confidential materials without an Order of the Court.

7. In the event any confidential material is used in any proceeding herein prior to the trial of this matter, it shall not lose its confidential status through such use and the parties shall take all steps reasonably required to protect such confidentiality.

8. All confidential material covered by this Order shall be kept safely and securely within full custody of counsel or others entitled to access pursuant to this Order. Additional copies of any Confidential Material may be prepared under supervision of counsel and shall be treated as confidential and maintained securely.

9. Maintenance of the confidential status of any such materials shall be subject to further order of this Court and nothing herein shall preclude any party from applying to the Court for modification of this Order. The parties reserve the right to make application to the court upon not less than five days' notice to seek permission to modify the provisions of this Order. Counsel shall first seek to resolve by agreement, and without involvement of the Court, any disputes regarding confidential designations.

10. After the termination of this litigation, including all appeals, all confidential material shall be returned to IDOC or destroyed.

Finally, Defendants' counsel shall update the privilege log, consistent with this Order, on or before **November 19, 2018**.

**SO ORDERED.**

**DATED: October 29, 2018**

**DONALD G. WILKERSON**
**United States Magistrate Judge**